O'BRIEN ET AL., APPELLANTS, *v.* EGELHOFF, SUPT.; CITY OF COLUMBUS, APPELLEES, ET AL.

[Cite as O'Brien *v.* Egelhoff (1984), 9 Ohio St. 3d 209.]

(No. 82-1691—Decided February 22, 1984.)

*Messrs. Baker & Hostetler* and *Mr. Terence P. Kemp,* for appellants.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick M. McGrath* and *Mr. Donald T. Plank,* for appellees.

*Per Curiam.* The sole issue before us concerns whether the partial grant of summary judgment in favor of the city of Columbus was proper.

Subsequent to the appellate court's approval of the grant of summary judgment to the city on the grounds of sovereign immunity, this court handed down the seminal case of *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26.

In *Haverlack,* this court stated that "* * * liability for negligence, and the defense of immunity, have been dependent upon the classification of the municipal function as proprietary or governmental. * * *

"Attempts to classify municipal functions into these two categories have caused confusion and unpredictability in the law." *Id.* at 29.

In abrogating the archaic defense of sovereign immunity for municipalities absent statutory authorization providing immunity, we noted that, "[m]any innocent injured victims have been precluded from recovering damages from municipalities because of sovereign immunity from liability for their negligence in the performance or nonperformance of governmental functions." *Id.* at 29-30.

Having cast aside the muddled categorization of the governmental-proprietary dichotomy, we set forth a new standard for determining a municipality's potential liability for the tortious acts or omissions of its employees and agents in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31.

In paragraph two of the syllabus in *Enghauser,* we stated that:

"Under this decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. *However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities.*" (Emphasis added.)

The inescapable conclusion directed by our prior holdings on this topic compels reversal of the case *sub judice.* Because summary judgment was improperly granted in favor of the city, appellants will have the opportunity to prove their allegations upon remand.

Therefore, we reverse the judgment of the court of appeals, and remand the cause for further proceedings according to law.

*Judgment reversed and*
*cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. I fully agree with the arguments put forth in the dissent presented hereinafter and reaffirm my position against the bootstrap

"stare decisis" utilized by the majority which I have articulated at some length in dissents in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 31; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 37; and *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 124.

In the instant case the majority has taken a position that is difficult to justify in view of their own prior cases. In *Enghauser Mfg. Co., supra,* paragraph two of the syllabus sets forth an exception to the abolition of sovereign immunity when an "executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion" is challenged by tort action. The policy of immunity for certain discretionary acts is justified on the basis "that the exercise of discretion should not be influenced by even the possibility of unsuccessful litigation against the official." *Armstrong* v. *Ross Twp.* (1978), 82 Mich. App. 77, 84, 266 N.W. 2d 674 (citing to *Sherbutte* v. *Marine City* [1964], 374 Mich. 48, 54, 130 N.W. 2d 920). Clearly "* * * it is not a tort for government to govern," see *Dalehite* v. *United States* (1953), 346 U.S. 15, 57, dissenting opinion (with respect to the Federal Tort Claims Act), nor should the executive branch of the government not be given room to govern. See *Adamov* v. *State* (1975), 46 Ohio Misc. 1, 6 [75 O.O.2d 41] (in the context of the Ohio Court of Claims).

In the case herein a zoning inspector who was acting in his official capacity has been successfully challenged with the bludgeon of tort litigation. By not protecting this official who was acting within the course of his duties the end result will be to stifle the zeal of all public officials in their efforts to do their jobs and to protect the public. The end result of today's decision will be to paralyze those functionaries whose lawful duty impinges on the prerogatives of anyone who can afford an attorney. Intimidation through litigation will not stop with zoning inspectors and the question is raised about the next group of public officials who will be deprived of immunity while acting within the course of their employment. Surely the majority, by eliminating sovereign immunity, cannot mean to hamstring those officials entrusted with the preservation of our health, life, and safety. Yet looking upon what the majority has done today, the specter of governmental paralysis has certainly been raised.

For these reasons I dissent.

HOLMES, J., dissenting. I hereby dissent from the opinion of the majority in accord with the dissents in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 31; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 37; and *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 126.

As I stated in *Enghauser* and *Strohofer,* there are certain activities undertaken by municipalities which should, even in the absence of general immunity, still be given immunity. In addition to immunity for judicial and legislative actions, there should be immunity afforded the discretionary actions of municipal employees which involve the essentials of government, such as are to be found within the instant case where this employee of the

city was carrying out the requirements of the Columbus Building Code. I specifically stated in *Strohofer* at 127 that: "The very good reason for this exception is that governmental officials should be able to carry out the essential functions of government without the fear of being second-guessed by the courts for the exercise of free and independent judgment in so acting. To hold municipalities liable in these circumstances would stifle the process of municipal government."

In *Hargrove* v. *Coco Beach* (1957), 96 So. 2d 130, the Florida Supreme Court judicially abolished governmental immunity by holding that municipal corporations are liable for the negligence of municipal employees while acting within the scope of their employment. However, the court limited the broad implications of its decision by further stating at 133:

"We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as *Elrod* v. *City of Daytona Beach,* 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and *Akin* v. *City of Miami, Fla.* (1953), 65 So. 2d 54."

It should be noted that *Akin* v. *Miami, supra,* in regard to which the Florida Supreme Court limited its decision in *Hargrove,* held that the exercise of the power of a municipality to grant a building permit or license is a function for which the city should not be held liable in tort for its wrongful refusal to issue a permit or license. Thus, the Supreme Court of Florida recognized the discretionary governmental function of building code enforcement and specifically retained governmental immunity for such function.

Likewise the Supreme Court of New Hampshire in its decision in *Hurley* v. *Hudson* (1972), 112 N.H. 365, 296 A. 2d 905, which abolished governmental immunity in that state, stated at 369-370:

"Nor would the planning board be liable on the basis that it failed to enforce the town's ordinance requiring adequate drainage, since the enforcement of laws in general, and zoning ordinances in particular, is certainly the kind of discretionary, 'governmental' activity which as a general proposition ought not to lead to tort liability. *Hermer* v. *Dover* [(1965), 106 N.H. 534, 215 A. 2d 693], *supra*; 2 Harper and James, [Law of Torts (1956)] *supra s.* 29.6, at 1623; *Prosser,* [Torts (4 Ed. 1971)] *supra s.* 131, at 979; 18 McQuillin, [Municipal Corporations (3 Ed. 1963)] *supra s.* 53.36, at 211-12; 3 Rathkopf, The Law of Zoning and Planning, 82-3 (3 Ed. 1972); 4 California Law Revision Commission, Recommendation Relating to Sovereign Immunity 817 (1963)."

Establishing these types of exceptions to the general abrogation of governmental immunity where the city through its employees is exercising a discretionary governmental function, would place Ohio in a more tenable position as followed by many other states.

LOCHER, J., concurs in the foregoing dissenting opinion.